UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN M. MEAD,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:20-cv-11784 |
|  | District Judge Stephen J. Murphy, III |
| v. | Magistrate Judge Anthony P. Patti |
| COMMISSIONER OF<br>SOCIAL SECURITY<br>ADMINISTRATION, |  |
| Defendant. | / |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 13) and AFFIRM THE COMMISSIONER'S DECISION**

I.     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment

(ECF No. 13), and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

Plaintiff Brian M. Mead brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for Disability Insurance (DI) benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 11), the Commissioner's cross-motion for summary judgment (ECF No. 13), Plaintiff's reply (ECF No. 14), and the administrative record (ECF No. 9).

### A.   Background and Administrative History

#### 1.   Prior claim

Plaintiff filed a prior claim for DI benefits on January 15, 2013.  (*See* ECF No. 9, PageID.106.)  A hearing regarding this prior claim was held on August 4, 2014, and Administrative Law Judge (ALJ) Martha M. Gasparovich found that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 9, PageID.103-117.)

#### 2.   Current claim and appeal

In his April 13, 2017 application for disability insurance benefits (DIB), Plaintiff alleges his disability began on January 1, 2015, at the age of 49.  (ECF No. 9, PageID.193-201.)  In his disability report, he lists arthritis on both knees, left hip, and disc 4/5 in low back issue as limiting his ability to work.  (ECF No. 9, PageID.256.)  His application was denied on November 9, 2017.  (ECF No. 9, PageID.131-138.)

Plaintiff requested a hearing by an ALJ.  (ECF No. 9, PageID.141-143.)  On April 24, 2019, ALJ Ramona L. Fernandez held a hearing, at which Plaintiff and a vocational expert (VE), Carrie Guthrie Whitmo, testified.  (ECF No. 9, PageID.63-

102.)  On May 14, 2019, ALJ Fernandez issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act from

January 1, 2015, the alleged onset date, through the date of the decision.  (ECF No.

9, PageID.58.)[1]

Plaintiff submitted a request for review of the hearing decision/order.  (ECF

No. 9, PageID.190-192.)  However, on May 5, 2020, the Appeals Council denied

Plaintiff's request for review.  (ECF No. 9, PageID.34-39.)  Thus, ALJ

Fernandez's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 1, 2020.  (ECF No. 1.)

---

[1] In so doing, the ALJ stated:

> The claimant previously brought a Title II claim, which resulted in a
> final decision by an Administrative Law Judge on October 17, 2014.
> The current claim arises under the same title as the prior claim.
> Because the claimant resides in the Sixth Circuit, *Drummond v.
> Comm'r of Social Security*, 126 F.3d 837 (6th Cir. 1997) and *Dennard
> v. Sec'y of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990)
> were considered as specified by Acquiescence Rulings 98-4(6) and
> 98-3(6).  After the date of the prior decision, new and material
> evidence was submitted into the record, which results in changes to
> the claimant's residual functional capacity.  ****  The new and
> material evidence and the resulting residual functional capacity
> changes are discussed below.  No new evidence regarding changes in
> the claimant's vocational findings was submitted.  The prior
> decision's findings regarding the claimant's vocational history were
> adopted in this decision.  The claimant's age has changed, however,
> he remains in the same age category and the rules continue to direct a
> finding of not disabled.

(ECF No. 9, PageID.48-49.)

## B.    Plaintiff's Medical History

The administrative record contains a relatively short medical record of approximately 224 pages, which were available to the ALJ at the time of her March 14, 2019 decision.  (ECF No. 9, PageID.327-551.)  These materials will be discussed in detail, as necessary, below.

## C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, his alleged onset date.  (ECF No. 9, PageID.51.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "Degenerative disc disease – lumbar spine; lumbar stenosis; osteoarthritis knees, status-post partial meniscectomy left knee; and obesity[.]" (ECF No. 9, PageID.51.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 9, PageID.51.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[2] and determined that Plaintiff had the RFC:

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

to perform light work . . . except occasionally climb, stoop, kneel, crouch, crawl or balance; no use of ladders, ropes or scaffolds; requires an opportunity to sit for up to 30 minutes after standing or walking for one (1) hour at a time.

(ECF No. 9, PageID.51-56.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 9, PageID.56.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembler, inspector and hand packager, and office helper.  (ECF No. 9, PageID.57.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 1, 2015.  (ECF No. 9, PageID.58.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

5

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff argues that the ALJ's RFC assessment is not supported by

substantial evidence because: (1) as the ALJ noted, his low back and knee pain

worsened in the summer of 2017, and the medical records supporting a finding of

disability; (2) the ALJ erred by concluding the pain was managed with narcotics;

and (3) the ALJ improperly cited to his daily activities as being inconsistent with

his complaints of pain.  (ECF No. 11, PageID.555, 560-564; ECF No. 14,

PageID.586-589.)  The Commissioner opposes Plaintiff's motion, asserting that

substantial evidence supports the ALJ's RFC assessment.  (ECF No. 13,

PageID.576-584.)

### 1.     RFC determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her

RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

("[D]uring the first four steps, the claimant has the burden of proof; this burden

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health*

*and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r*

*of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains

the burden of proving her lack of residual functional capacity.").  The

7

Commissioner has the burden of proof only at "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).[3]

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2). Pursuant to Social Security Rule (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

---

[3] To the extent, if any, Plaintiff frames his summary judgment motion as a challenge to the ALJ's Step 5 determination (*see* ECF No. 11, PageID.564; ECF No. 14, PageID.568-587), he is actually challenging the RFC determination. See *Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

### 2.   The Court should find that substantial evidence supports the ALJ's physical RFC assessment

Plaintiff argues, very generally, that the ALJ's RFC assessment is not supported by substantial evidence.  For the reasons that follow, I disagree.

To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2.  In assessing Plaintiff's RFC, the ALJ considered the record as a whole in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p, including Plaintiff's statements regarding his symptoms, to conclude that Plaintiff could perform light work with certain limitations, and Plaintiff has failed to meet his burden of demonstrating entitlement to a more restrictive RFC.

### a.   Objective medical evidence

First, the ALJ extensively discussed the objective medical records related to Plaintiff's lumbar spine and knee impairments, acknowledging Plaintiff's degenerative disc disease of the lumbar spine, chronic low back pain, osteoarthritis of the knees, and left medial meniscus tear, but found that though the records plainly demonstrate severe impairments limiting his ability to perform work-related activities, "[o]bjective evidence of the claimant's impairments, nevertheless, remains consistent with the residual functional capacity determination."  (ECF No. 9, PageID.51-53.)

Plaintiff seemingly concedes the accuracy of the ALJ's citations to the record, simply asserting that the ALJ should have reached an alternate conclusion on the basis of such evidence.  (ECF No. 11, PageID.561; ECF No. 14, PageID.587.)  Plaintiff repeatedly references what he characterizes as the *inadequacy* of the evidence relied upon by the ALJ.  (*See, e.g.*, ECF No. 11, PageID.564; ECF 14, PageID.586-587, ¶ 1.)  However, while the Undersigned acknowledges the apparent severity of Plaintiff's impairments, as evidenced by the medical records cited by the ALJ and Plaintiff, the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  Instead, the Court considers whether substantial evidence, which is more than a scintilla but less than a

preponderance, *Rogers*, 486 F.3d at 241, supports the ALJ's decision.  And again,

"if substantial evidence supports the ALJ's decision, the Court defers to that

finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (citation omitted).

### b.    Medications taken to alleviate pain/symptoms

The ALJ also considered Plaintiff's medications to assess the RFC, stating:

> The record reveals the chronic low back pain has been managed with
> prescribed pain medication Norco (hydrocodone and acetaminophen),
> muscle relaxant, Soma (carisoprodol), and epidural steroid injections.
> Currently, the lumbar degenerative disc disease is managed with
> Norco and Motrin (ibuprofen) (Exhibits B2F-B3F, B5F, and Hearing
> Testimony).

*   *   *

> The bilateral knee pain has been managed with Norco, Pennsaid
> (diclofenac sodium) non-steroidal anti-inflammatory topical solution
> and interventional treatment including ultrasound guided intra-
> articular knee joint injections and right knee genicular nerve block
> (Exhibits B5F and B13F).

(ECF No. 9, PageID.53-54.)

Under 20 C.F.R. § 404.1529(c)(3)(iv), to evaluate a claimant's symptoms,

an ALJ may validly consider the type, dosage, effectiveness, and side effects of

any medication taken to alleviate pain or other symptoms.  Plaintiff does not deny

that medication may be considered, but asserts that the ALJ "glosse[d] over his

pain as being managed by the opioid Norco," his employer would not allow him to

work because the narcotic makes him groggy, and "[w]hile the opioid manages the

pain, the continued treatment and the close monitoring of this through the record in

exhibits B5F (AR 383-422) and B13F (AR 482-522) as well as his testimony (AR

61-2) shows that he would be limited in attention by the pain, as he attested and as

not discussed by the ALJ." (ECF No. 11, PageID.561, 563; ECF No. 14,

PageID.588-589.)  However, the ALJ did directly address, and discount, Plaintiff's

testimony that the Norco makes him drowsy, stating:

> As mentioned earlier, the claimant has been prescribed and has taken
> narcotic based pain relieving medication (Norco), which weighs in the
> claimant's favor, but the medical records reveal that the medication
> has been relatively effective in controlling the claimant's symptoms.
>
> Although the claimant has alleged grogginess from the use of Norco
> pain medication, the medical records, such as office treatment notes,
> do not corroborate those allegations.

(ECF No. 9, PageID.55.)  And Plaintiff both concedes that the medical "record

does not show a complaint of side effects" from the medication (ECF No. 14,

PageID.588, ¶ 5), and fails to cite to any evidence in the record beyond his own

testimony identifying additional limitations associated with his use of Norco, or to

any case law supporting his argument that the ALJ's analysis of Plaintiff's

medication here constitutes error.  Instead, Plaintiff asks, based on the NIH website

stating that sedation is a primary effect of Norco, that the Court take judicial notice

of the drug as an opioid.  (ECF No. 14, PageID.588.)  But even if such notice were

taken, this does not establish what effect it had on this particular claimant's ability

to work or upon his ability to work in a particular job with appropriate conditions.

And again, it is not within the province of the Court to "reconsider facts, re-weigh evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ, *Reynolds*, 424 F. App'x at 414, and a "claimant . . . retains the burden of proving [his] lack of residual functional capacity," *Jordan*, 548 F.3d at 423.  I also note that to the extent Plaintiff argues that his past employer would not allow him to work while on Norco, that representation is of no moment, as the ALJ concluded that Plaintiff would be unable to perform past work in any case.  (ECF No. 9, PageID.56.)

### c.    Plaintiff's activities of daily living

The ALJ further considered Plaintiff's activities of daily living, stating:

> Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment [than] can be shown by the objective medical evidence alone, the undersigned considered the factors described in 20 CFR 404.1529(c)(3) and 416.929(c)(3), in addition to the objective medical evidence when assessing the claimant's allegations of disabling symptoms and limitations.  The claimant has no problem performing personal self-care tasks independently, attend his teenage daughter's horse riding events, dine out, watching movies at the theater, visits with his mother who lives 18 miles away, and viewing his car collection in his pole bar[n] (uses a golf cart to go to the pole bar[n]) (Exhibit B4E and Hearing Testimony)[.]

> Despite the allegations of symptoms and limitations preventing all work, the claimant's records and hearing testimony reveal the claimant went hunting in November 2018.  In addition, the claimant testified to hunting in 2015 and 2016.  Although hunting and a disability are not necessarily mutually exclusive, the claimant's decision to go hunting tends to suggest that the alleged symptoms and limitations may have been overstated as hunting suggest[s] prolonged sitting and spotting for game (Exhibit B12F).

13

(ECF No. 9, PageID.54-55.)

Plaintiff argues that none of these activities equate to the demands of light work, nor "*equate* to the ability to be on his feet more than the 2 hours cited by the vocational witness that would take the work that witness cited to the sedentary unskilled category for which, by virtue of his attaining age 50 in May, 2017, qualifies him for benefits." (ECF No. 11, PageID.562, 564; ECF No. 14, PageID.587 (emphasis added).)  Indeed, "[t]he Social Security Administration and the 6th Circuit have made clear that the ability to perform minimal daily activities does not equate to the ability to perform work activities on a regular basis, 40 hours a week." *Coloske v. Comm'r of Soc. Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar. 18, 2014) (Berg, J., *adopting report and recommendation of* Hluchaniuk, M.J.).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (evidence of minimal daily activities on a sustained basis).  However, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 352.  *See also* SSR 16-3p, 2017 WL 5180304 at *8; 20 C.F.R. § 404.1529(c)(3) (factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities).  And these are not necessarily "minimal daily activities."

14

Consistent with the ALJ's findings above, a review of the record reveals that Plaintiff testified to attending his daughter's horse-riding competitions, doing house chores every once in a while, traveling 18 miles from his house to visit his mother, going to the movies and out to dinner, going hunting, and getting to the pole barn in a golf cart, and needing no assistance bathing or dressing himself (ECF No. 9, PageID.75-82), and stated in his Function Report that he could visit and go out to eat with others (ECF No. 9, PageID.278).  And although Plaintiff's daily activities may not be the most persuasive evidence of his ability to work on a sustained basis, the ALJ recognized this, and it was only one facet of her reasoning in evaluating his symptoms.  *See Reynolds*, 424 F. App'x 411 at 414 (Court should not re-weigh evidence).  Further, the above activities appear consistent with an RFC to perform light work with certain additional limitations.

### d.    Medical opinions

Finally, the ALJ compared Plaintiff's allegations regarding the severity of his symptoms with the medical opinions available.  The ALJ found persuasive the opinion of Dr. David Mika, a State agency consultant (ECF No. 9, PageID.55), that Plaintiff could perform medium work with the following additional limitations: "stand and walk no more than 6 hours in an 8-hour work day; lift no more than 50Lbs occasionally and 25 Lbs frequently; limited to standing or walking for only 1 hour at a time, and would then require the option to sit for up to 30 minutes;

15

occasionally squat, crawl, kneel, climb, balance, bend, or stoop" (ECF No. 9,

PageID.123).  In so doing, however, the ALJ stated:

> It is consistent with the evidence of record at the time including
> arthroscopic partial meniscectomy (September 2017).  However,
> status post arthroscopic surgery, the claimant continues to alleged
> [sic] difficulty with prolonged standing/walking and sitting which are
> consistent with a less physically demand[ing] level of light work with
> no ladders, ropes or scaffolds and alternating sitting opportunity.

(ECF No. 9, PageID.55.)

Plaintiff takes issue with Dr. Mika's opinion that he could lift 50 pounds

(ECF No. 11, PageID.563-564), but the ALJ did not adopt this finding, instead

limiting Plaintiff to light work, which "involves lifting no more than 20 pounds at

time with frequent lifting or carrying of objects weighing up to 10 pounds."  20

C.F.R. § 404.1567(b).  Further, with regard to Plaintiff's assertion that, in contrast

to Dr. Mika, Dr. Jai Prasad opined that Plaintiff could only lift 15 pounds (ECF

No. 11, PageID.564; ECF No. 14, PageID.588), I can find no support for such

assertion on the pages Plaintiff cites to, or in the record surrounding.  I see only a

statement from Dr. Prasad that Plaintiff reported being told by his physician not to

carry "more than 15-20 pounds in weight."  (ECF No. 9, PageID.466.)  Thus, the

fact that he doubled down on this assertion in his reply brief (*see* ECF No. 14,

PageID.588) is troubling.  And Plaintiff's argument that any increased pain, as

noted by the ALJ when evaluating Dr. Mika's opinion, would not be consistent

with light work is purely speculative.  (*See* ECF No. 11, PageID.563.)

Further, I find disturbing Plaintiff's assertion that the "ALJ's use of [Dr. Jessica Bartok's opinion] is unclear as the doctor is clearly referring to restrictions involving an arm laceration while the ALJ seems to use this as all encompassing." (*See* ECF No. 11, PageID.564; ECF No. 14, PageID.588.)   The ALJ specifically acknowledged the temporary nature of the restrictions and relation to an arm laceration, stating:

> Jessica Bartock, DO, provided restrictions on the claimant's physical functioning.  Dr. Bartock restricted the claimant to no vigorous activity, no lifting with right arm for 1-2 weeks, no hunting for 1-2 weeks, and no driving while on narcotic medications (Exhibit B12F).

> The undersigned finds the restrictions persuasive.  The restrictions are supported by the claimant's right forearm laceration injury secondary to a slip and fall during a hunting trip.  However, the restrictions have expired and no longer require accommodation.

(ECF No. 9, PageID.55-56.)

Accordingly, the Court should conclude, on the basis of the above, that substantial evidence supports the ALJ's RFC determination, and deny Plaintiff's request for reversal or remand.[4]

### F.     Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this

---

[4] Should the Court agree, it need not address any argument that the Plaintiff makes about application of Vocational Rules 202.14 and 202.21.  (*See* ECF No. 11, PageID.560.)

burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 16, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

19